The first case this morning is number 2007-1082, System General Corporation v. ITC. Mr. Jakes. Good afternoon. May it please the Court. This appeal concerns two limitations and two particular patents, the 398 patent and the 908 patent. And for each one, the International Trade Commission construed the claims and found there was infringement. It's our position on this appeal as to a particular limitation in each patent claim that was asserted for each of the two patents that there's not substantial evidence to support the findings of infringement. Let me tell you what's the problem I'm having here. This is a complicated case in terms of the technology. You're asking us to read these wiring diagrams as though we were a trial court. And what we have to do is to see what the expert witnesses said about the diagrams and to see if there was substantial evidence in the expert witness testimony to support the decision that the administrative law judge made here. And both sides here seem to want us to function as a trial court and read these wiring diagrams, which that's not our job. What's your response to that? Your Honor, I don't think you have to do that. Now, we've tried to explain how the circuits work so that the Court can understand them. And you do have to look in the record for that substantial evidence. But we tried to focus the appeal on two very specific aspects of the claim construction. For example, in the first patent, the current input circuit, and the specific aspect of the commission's claim construction, that it does not monitor voltage. It cannot monitor voltage. And I ask you to look in the testimony and find where one of the experts said that it doesn't monitor voltage. If you look at the testimony, what you will see... it's outside the claim, if it does monitor voltage, or whether it can both monitor voltage and monitor current. I believe the claim construction is clear on that point, Your Honor, that there are two parts to the claim construction. The first part is that a current input circuit must be monitored. Exactly. What was surrender? Over Atigen and Levin are the two references, right? And in the process of distinguishing those two references, the applicant gave something up, right? That's right. Now, they didn't give up that the circuit as a whole, that the device, the accused device, could regulate voltage, right? No, they gave up... It has to regulate voltage, otherwise it won't work. That's right. They gave up that the input circuit doesn't monitor voltage. And they distinguished... And where explicitly is that so? Where did the applicant say exactly that for the clear and unmistakable surrender? Your Honor... Can you point to the record to where the applicant was distinguishing Atigen, as it is, and Adjaman and Levin? Yes, Your Honor. On the amendment that begins in the appendix at page A477 and on page 478, and it's the language that we've also quoted and agreed, where the applicant said a fair reading of Adjaman reveals that the circuit monitors voltage rather than current. Circuit monitors? Yes. As a whole. Adjaman was a voltage regulator, didn't do anything to current, didn't modify it, didn't manage current, simply managed voltage. Well, all the circuits that are involved in this case monitor voltage... Well, they have to, otherwise they don't work. Right, they burn the modem up. Right, so that argument wouldn't have distinguished. I was asking you where in this reference is the specific language that says we surrender any voltage regulation in the input circuit, in the current input circuit. I would guess if you continue to read in that paragraph where they say Adjaman fails to disclose, teacher fairly suggests a current input circuit coupled to receive a current representative of an input voltage. That's because it wasn't regulating current. All Adjaman did was regulate voltage. Accepted a current and then regulated voltage. I believe you're talking specifically about the current input circuit, not the circuit as a whole. Right, Adjaman fails to disclose what we claim, which is a current input circuit coupled to receive a current representative to generate. Adjaman had none of that. Because it monitors voltage. Just pure and simple. The input circuit monitors voltage. Where does it say the input circuit monitors voltage? Where is that explicit, clear, and unmistakable surrender of scope? It has to be in that paragraph, Your Honor. It's not there. I don't see it. Okay, well then... I can't make it up. Why isn't it so that all Adjaman and Levin presented by the examiner were simply electrical devices, electrical structures, that received a current and then modified the voltage? That's all they did. They were voltage regulators. And so the scope of the surrender is, after the applicant got his patent, he could never read the patent on a voltage regulator. That's all. Well, if that's the case, then we wouldn't be here. Because these circuits that are involved regulate voltage. Well, that was why I'm asking the question. Yes, and I don't think anyone has interpreted that portion of the amendment to say it excludes all voltage regulators. But where in Judge Luckern's opinion did he say that the surrender was to a voltage monitor in the input circuit? In his claim construction... Where exactly did he say those words? I didn't see them anywhere. He just simply said, well, you can't claim a device that regulates voltage. I understood from his claim construction, which... Like where? On page 859. 859? Where he said, I construed the phrase, current input circuit, to mean, one, a circuit that receives a current and produces or generates an output signal in response to the received current. And, continuing, that a current input circuit does not include voltage dividers and other circuits that monitor voltage. If you'd stopped at the beginning there, before the second half of that construction, you would lose, right? Well, I won't say I would lose, but I'd be making a different argument. I'm not contesting that there's no substantial evidence to support the first part of that claim construction. Okay, so it's the second part of the claim construction that you're relying on. That's exactly right. And, basically, if we conclude that there's no clear and unmistakable surrender in the prosecution history for a device that also regulates voltage, then you lose too, right? I would have to say yes, Your Honor, but I don't believe that the claim construction is at issue on this appeal. We've accepted the claim construction as it is. Well, we don't have to accept your interpretation of the claim construction. We don't even have to accept the claim construction if it's clear. We can come up with our own claim construction. Well, we are not challenging the claim construction, and I don't believe the Commission or Power Integrations is challenging the claim construction. And so, in this appeal, we have taken the claim construction as it is, and our argument is that the judge did not apply it. Well, the question also is, what does the claim construction mean? And it's not 100% clear what it means. I think, at least, what you can take away from it, and I don't think there's any dispute reading what Judge Lockhart said in his initial decision, the current input circuit does not include circuits that monitor voltage. I think that's fairly unmistakable on his opinion, and what I've asked the Court to do is to look, and we've pointed out the evidence, and say, where is the evidence that our input circuit does not monitor voltage? Well, was there any expert testimony pertinent to the question that Judge Clevenger was asking about? That is, to look at these three prior art references, and to see whether they had a circuit that regulated according to the current input? Yes, there was. We did present those as invalidity arguments, and they were rejected, because each of those references was determined to monitor voltage, much like the accused product. And to apply the claim construction consistently across those, it's our position that you have to conclude there's no substantial evidence that System General's controllers, the input circuit, does not monitor voltage. The 439 patent is offered by your client as sort of the paradigm example of the accused product, right? It is. And with all due respect, I couldn't find any voltage regulator in the input circuit, current input circuit in the 439. I find voltage regulation going on down in the heart of the device, aplenty, which you need to have in order to make it work. Yes. Well, the question is, whether the input circuit, which is the VIN pin, whether at that point there is, the circuit monitors voltage. And if you can see, if you look at the page... No, no. Is there voltage monitoring at the VIN? Yes, that's the question. And we introduced evidence that there was. Well, so what if there was, if the claim doesn't depend on that? You know, the question is, was there a clear and unmistakable surrender in the prosecution history, right? You have to rely on the prosecution history because the specification doesn't answer this question, right? Well, I think they both lead to the same conclusion. But we've, as Judge Luckern did, hinged his claim construction on what the applicant said in the prosecution history. Okay, so where is the clear and unmistakable disclaimer in the prosecution history with respect to these three prior art references? I mean, at best it seems to me it's unclear. Your Honor, I'm not really sure how to answer that except to point back to the language I did that distinguishes the Agamemnon reference. And that's what Judge Luckern based his claim construction on. And I don't believe either party has contested that. So we either take his claim construction as it is and apply it to this record, which I've asked the court to do, and conclude that we don't infringe because we don't meet the court's claim construction. If we have a different claim construction, then I suppose we have a different record. Judge Luckern, as well as your adversary, discounts the evidence that you claim shows voltage regulation at the current input circuit. Yes. They say that's either a drawing or a representation of some sort because they're inconsistent. One shows voltage regulation and one doesn't. Well, our experts did testify that they both showed that there was voltage being monitored at that input. But the real issue is it wasn't our burden to prove non-infringement. We present that evidence to show that there was something in the record that shows that our circuit does monitor voltage. It was incumbent on power integrations and our commission to support the finding of infringement to show that our circuit under the claim construction does not monitor voltage. So even if our evidence is discounted and it's a tie because there's nothing in the record, I think we win. Correct me if I'm wrong. My understanding of the record, sir, is that each of the accused products was found to infringe both of the patents in the suit. That's right. And so that would lead me to think that you must prevail on both patents in order to escape from the exclusion order. As it currently is. But there are other issues that could, for example, if we don't infringe one of the patents, there could be design-arounds that might be available in the future if the exclusion order is not. Well, no, what I'm trying to say is assume for purposes of argument we agreed with you on one of the patents but not on the other. Yes. Why isn't that still an affirmance? I think the exclusion order would have to be modified because it excludes products that infringe both patents. It's future-looking is what you're saying. That's right. And you want to be able to design-around. You might be able to design-around one but not the other. Right. That's right. A remand would be in order for restatement of the exclusion order if we were to agree with you on one patent but not on the other. I believe that would be appropriate, yes. I didn't get to the second patent. Let's hear from the other side, and we'll save you rebuttal time, Mr. Jakes.  Thank you, Your Honor. And may it please the Court. With regard to the claim construction, the ALJ relied on the experts and found that they all agreed that the claim's current input circuit cannot monitor a voltage. That claim construction isn't disputed and wasn't disputed even before-it was disputed before the commission but not before the ALJ, excuse me, but not before the commission. And so the parties have all taken that claim construction. Why? I mean, does the prosecution history really show that there was a disclaimer of- Late, late, late, of an input circuit that monitors voltage as well as current? Your Honor, what they say in the prosecution history is that the prior art does not disclose a current input circuit capable to receive a current. And so they distinguished the prior art on that perspective. The ALJ interpreted that to require that the current input circuit not monitor voltage. But maybe he's wrong. But I think even if you were to find that he was wrong with the claim construction, they don't dispute that the other limitations are present and supported by substantial evidence. And so even if that limitation weren't part of the claim construction, you could still affirm the commission's finding just because the other elements, the other parts of the claim construction that the ALJ issued are not disputed. No, no, but the claim as Mr. Jakes would have it, the current input circuit can't be a current input circuit as claimed if it monitors voltage. Your Honor, in this case, the current input circuit does not monitor voltage. Yeah, but the question that we're asking about is why is that claim construction if in fact that's what the ALJ meant? What's the basis for that? What's the basis in the prosecution history for the notion that it can't monitor voltage as well as current? The prosecution history says that, or they distinguished the prior art saying that the prior art monitors voltage. Period. And that it doesn't monitor current, exactly, period. And so they, the ALJ came forward and said, okay, the current input circuit. Well, does it say that it doesn't monitor current? Does that mean that one that monitors both current and voltage is being disclaimed? It means that what is, that one that monitors voltage is being disclaimed. But that's not the question. The question is why is it a disclaimer of a device that monitors both current and voltage? I don't think it necessarily is. And I don't think it has to be. I think it's just related to the voltage. Well, the preferred embodiment of the 398 obviously monitors voltage as well as current. The thing won't work if you burn the modem up if you don't monitor it. Exactly, but in this particular, in the prosecution history, it used a voltage divider with two resistors to monitor voltage. And that's what it was. It was a voltage circuit, and that's what it was monitoring. And they disclaimed that. They said what we're doing is very different here. We monitor current at a current input circuit. And that is what the ALJ, what the ALJ said. It says it has to receive current and produce to generate an output signal. And it doesn't include voltage dividers or other input circuits that monitor voltage. Well, assume for purposes of argument that Mr. Jakes is right on the claim construction, and you seem to want to embrace that. What do you do with the evidence of record that Mr. Jakes has produced for his client that shows the physical presence of a voltage regulator in the input circuit? Your Honor, there isn't. They rely on resistors 40 and 15. And if you look at page 19 in the blue brief, there's a drawing, I believe, it's a block diagram. Your Honor, this particular diagram, if you look at page 1333 in the blue brief. Hang on a second. We've got 13, there's a lot of volumes around here. Yeah, I apologize. Yeah, well. But this particular one has the same drawing, but it looks like. 13 how much? 1333. And this particular schematic diagram shows the same one that's on the blue brief at page 19, but it compares it to the schematic. And now we have testimony from Dr. Blachschild that says. What am I to make of the drawing on page 1313? There's a drawing on the right, which is supposedly the same thing I find on page A19. Yes. And that purports to show a voltage regulator between VIN and VDDD, right? It shows a resistor between VIN and VDDD. And if that was a faithful and truthful and honest representation of the accused product, would that show. I have to say, if it were. If it were. Would that show a voltage regulator in the input circuit? Yes. Yes. Yes. Now, you're telling me that the drawing that's at A19, inserted by Mr. Jakes on behalf of his client, purporting to be a faithful reproduction of the accused device is unfaithful. It's not an accurate representation of the schematics. And that's what the testers are talking about. If you look at, Dr. Blachschild testified that this was not, at A10436, he testified that this was not a true representation. Also, Mr. Yang, who is SG's CEO and president, testified that this data sheet, the one that we're looking at here, was just used for power supply control designers, who would be putting this chip in their product, who don't need to know what is actually going on inside. And the fact of the matter is, is that the current divider that is actually in their product does not work the same way that this specification, this data sheet, purports to show it. It accepts a current coming in, coming off the resistor 40, and it splits it. Where does the drawing that shows that? Well, Your Honor, the schematic itself shows that. But if you also go to the 439 package. Which is the schematic? Is that the thing that's supposedly on the left on A1333? That is the schematic, yes, Your Honor. That's virtually impossible to read? Unfortunately, yes. There's also, if you look at A1021, there's also a fuller drawing of the schematic. It's a little bit easier to see, I think. 1021? 1021, yes. But it's a little bit easier to see, I believe, in the 439 patent, which is SG's patent at A757. You can see there, you have the VIN terminal, and it goes across the resistor 40, creates a current going into the current divider, which is box 10. And you have the two transistors. Those two transistors split. This is exactly the problem I'm talking about before. You're standing there, and you're telling us what these wiring diagrams mean. To me, that has no significance whatever. The question is, what do the experts testify that these wiring diagrams mean? Your position, I would suppose, must be that at worst, for you, there's conflicting expert testimony as to whether the input circuit here monitors voltage. And that we have a finding of fact by the administrative law judge. You say that it does not, right? Correct. Your Honor, I can point you to the testimony. Dr. Glauchel testified as to how the SG's current divider works at A10, 511 to 514. Mr. Yang, again, SG's expert, testified at A10, 892 to 894. If you look at the 439 patent itself, which is SG's patent drafted by Dr. Yang, who's SG's CEO and president, it explains very clearly what these diagrams show. And you can go through, and it explains when the power supply is turned on, the input current flows into the current divider consisting of two MOSFETs through the input resistor. Most of the current flows through one side. The rest of the current flows through the other side. It's very clear when you look at this that we're talking about a current going through the voltage divider. And it explains on column 2 that that current is representative of a voltage, but that it doesn't monitor voltage. It just monitors the current based on the size of the two transistors. You're talking about the current monitor 12 and 11 in the 439? Yes. Yes, Your Honor. And I think the 439— Well, and I said that to Mr. Jakes. I didn't hear him disagree. There doesn't seem to be any monitoring of voltage at the input current in the 439. Right, and they don't argue that there is. They try to bring in additional components that are outside of the current input circuit to show that it monitors current, or that it monitors voltage. But that's not important. What we're really concerned with here is what the current divider does, what the current input circuit monitors. And that's what is crucial for this particular appeal, and that's where the evidence must be found. Thank you, Your Honor. I'd like to reserve the time for interview now. Thank you. May it please the Court. Howard Pollack, Fish and Richardson for Intervenor Power Integrations. Your Honor, I'd like to get back to your question about the file history. And I think the important point to be made is that during prosecution, the prior art that was in front of the examiner that was distinguished were circuits that monitored solely voltage, only voltage. And those were what was distinguished. There was never any discussion about a circuit that might monitor both current and voltage. Then what do you take to be the meaning of Judge Lockhearn's interpretation of the current input circuit? A circuit that monitors at its input exclusively voltage with, for example, a conventional... Not exclusively current. No, it was excluded. It was excluded. A circuit that monitored current and potentially something else was not excluded. As long as the input monitored a current and did not exclusively monitor a voltage, then it could be a current input circuit. So you're telling me that the surrender was actually too adjuvant. Yes. Or an 11. That that was the nature of the surrender. Yes. And that there was no surrender of a structure that would both modify current and voltage at the input. That's correct. There was no such art in front of the patent office at the time. Why do you suppose Judge Lockhearn didn't write it down like that then? Because here's why. Mr. Jakes wouldn't have been confused. As he said, he wouldn't have been here. Because if you read a little bit earlier, when you read the court's discussion of the dispute below, what was argued below by SG was that their circuit monitored voltage exclusively and not current, and therefore they didn't infringe. So the issue that was framed in front of Judge Lockhearn was, does a circuit that monitors only voltage, can that be a current input circuit? Because that was the way they framed the dispute. This issue about now that it maybe monitors current and voltage is something that was raised for the first time on appeal. So if you read Judge Lockhearn's discussion of this issue, the dispute in front of him, was that the argument from SG is that their circuit monitors voltage, not current. I find— Okay, if I could point you to page 854. That's back in the blue brief. It's the easiest place I found in this, Rapala. This is helpful to me to sort of frame up what the true nature, what the real nature of the dispute was about claim scope because of the disclaimer. There in paragraph two, in sort of the middle of the page, there's the last sentence of the paragraph that says, Complainant, that's you, right, further argued it did not disavow any circuit that monitored internal voltage from being a current input circuit. And then there's a CRBR at 24. If I had that CRBR at 24, that supposedly would explicate what you're now telling us? I think that there's a slight misunderstanding between the circuit that monitors the input, so you're looking at what the input is, versus the rest of the circuit inside. Because there are, if you look at the preferred embodiment of the patent, what is monitored at the input is a current, but that current is used inside the circuit to generate a voltage, which is then used for another purpose. Wait, wait, wait, I'm confused. Because Judge, before we change the subject, Judge Leckron was really focusing on the claim, wasn't he? Yes, Your Honor. Which says nothing about voltage. Correct. So his explanation fits in, fits with the claim. Yes, it does. But he then didn't reach the point which we're now debating. He did not reach the point where you're now debating, which is was there something between a solely exclusive voltage circuit and a solely current circuit that was or was not disavowed? Because that was not an issue that had been framed for him. It wasn't a question that was put before him. Well, what's your view? If you have an input circuit which both monitors current and voltage, is that within the claim limitation or not? I believe it is. I believe as long as the circuit is receiving a current and responding to that current, then that is a current input circuit as construed and was not excluded during prosecution. But that's where the prosecution history comes in, doesn't it? Which weighs on the other side? Well, again, it weighs on the other side only, as Judge Coventry pointed out, to the specific, what was specifically in front of the patent office and what was specifically excluded were circuits that were solely voltage-based circuits. There was no suggestion that those circuits responded to current in any way. And I'd like to just respond because the question was, where is the evidence that the circuit in question, the SG circuit, does not monitor voltage? I would point the court to Mr. Blauschild's testimony at A11534-36, where he's discussing the Yang patent and explaining how the circuit shown in Yang, which we agree is the circuit in the accused products, responds to current, not voltage. And he says that expressly. He also says, and this is at the site that the ITC counsel pointed to, he explains the schematic of the current input circuit, which is a current mirror, and he explains how it receives and responds to changes of current at the input and not to changes in voltage at the input. And there's clearly substantial evidence in Mr. Blauschild's testimony supported by the documents which he cites. What about the data sheet that Mr. Jiggs points to that apparently shows a voltage regulator in the current input circuit? Your Honor, the ALJ looked at that evidence. He heard the testimony based on it. He also heard the testimony from Mr. Blauschild based on the schematics, where Mr. Blauschild said that the schematics are the true representation of the part, not the data sheet. They're inconsistent. And the ALJ chose to credit Mr. Blauschild's testimony and to distinguish and not to credit the testimony about the block diagram. And I believe, with all due respect, that that is substantial evidence and it should not be the subject to a re-review or re-weighing of that evidence on appeal. Where exactly did the administrative law judge make a finding that the input circuit here does not monitor voltage? His finding is at A104 and A105. He says the VIN terminal controls the current limit and the VIN terminal voltage does not. Hence, the ALJ rejects the respondent's argument that the V limit signal, which is the internal signal, is generated in response to a voltage, not a current. That's at A110. And then again at A110, respondent's schematics show A110. Where on A110? This is the ALJ's decision. It's at the top of the page. Help me out a little bit. There are no lines here. Okay. It's sort of in the middle of the first full paragraph. However, the ALJ has already found that respondent's schematics show that the accused parts monitor current, not voltage. And as properly construed, respondent's accused parts have a current input circuit, which is coupled to the VIN terminal. And then he goes on and says that the respondent's arguments that the V limit signal… When he's talking about the accused parts, he has to be talking about the accused current input circuit, right? That's correct. If we know the accused device as a whole, as well as the patent as a whole, monitors voltage. Right. He's talking about the schematics of the current input circuit, which were discussed in Mr. Blaufschild's testimony. And those schematics, just for the record, are at A1517 to A1519. And the important one actually is shown best at A1719. If my colleagues don't have any more questions about the first claim construction issue, I have a question about the second one. With the Court's indulgence, I'd be happy to answer one. Okay. The problem with respect to the second patent is that we don't have a specific finding by the administrative law judge that the functional response exists, if I can put it that way. What's the answer to that problem? I mean, there's plenty of evidence in the record. I would agree that there's enough evidence to support finding the claim limitation satisfied. The problem is I don't see a specific finding to that effect. The ALJ specifically found that the claim limitation being discussed was present. He didn't use the words, as I've construed that. But I believe that it is incumbent upon this Court to assume that the ALJ was applying his own claim construction when he said expressly, and this is at A121. A121? Right. Respondents accused products meet the limitations of the first clause of Claim 26. Where are you on A121? Sorry, Your Honor. Where are you? First full paragraph. First full paragraph, yes. Based on the foregoing where he explains the evidence, the administrative law judge finds that the respondents accused products meet the limitations of the first clause of Claim 26 of the 908 patent, and that's the multifunction circuit clause. So you agree that there's no finding of responsiveness explicitly, but your argument is that it's subsumed within this general finding about satisfying the claim limitation. No. Just the first point, which is that he does find that the limitation has been met. As far as responding to the signal, I believe the findings are that we've talked about it in detail, how the current limit adjustment function performs in response to the input signal, and there's graphs that show that. Where does he make the finding about this specific aspect of the claim limitation? I thought the briefs agreed that he did not. Yes, he did not quote that portion of the construction and say I expressly find that. Not just a quote. You can't find in here an explicit finding on the responsiveness point, right? No, I disagree. I think that his findings of how the, he made factual findings about how the different functions work, and those factual findings do say that those functions are in response to the current at the VIN pin. I believe those are expressed factual findings. So if in the sentence where he said, based on the foregoing we find the accused product meet the limitations, if he said comma, including the responsiveness limitation, comma. There wouldn't be a dispute. Well, but I mean your argument is that that's in essence how we should read this. He says when you meet the limitations he doesn't mean some but not all. Right. I believe that if you look at his finding in the 398 patent, he says expressly it meets the current limit circuit as I have construed it, quote unquote. I believe that the fact that he didn't say as I have construed it in this sentence elevates form over substance. I don't think that's not the problem. That's not the problem. The problem is that this limitation is a complicated limitation. The question is has he made the necessary factual findings? You point out that he's made a finding the claim limitation is satisfied. Maybe that's sufficient, maybe it's not. But it's not a question of adding as I've construed the claims. That's certainly inherent in what he said. The question is was he required to make a more detailed finding that addresses the responsiveness point directly. I believe that we argued as a matter of law that he did not. There's nothing in the case law that suggests that such a finding is necessary. The ITC staff pointed to cases which said that if the logic and the path of the administrations is clear that even if it's not a model of clarity it should be affirmed. And I would submit to the court, and this is in A119 and A120 where the ALJ is described in multifunctions that the factual findings there support that these functions are being performed in response to the... On an issue like this is there any reason to treat an ALJ differently than we would treat a U.S. District Court judge? I actually believe that there is. There's some case law to suggest that the administrative deference to the administration allows a little bit more leeway in terms of how clear and definitive... You wouldn't need any more leeway for the District Court judge, would you? I mean, if the record supports, factual record findings of facts support what the legal conclusion is you don't need a statement of the law. This court has said on many occasions that you review judgments and not opinions and that if the record evidence supports the judgment that you can affirm. In any case, before we leave this clause, he's only talking about the first clause of the Claim 26, in any case. That's correct, and that's the only portion of the claim that's in dispute. Okay, any more questions? Okay, thank you, Mr. Pollack. And would you enlarge Mr. Jake's time by as much as we've run over? I think it comes to about 10 minutes. I don't know if you would need all that time. I just have a couple of points and I'd like to start with the 908 patent. The judge didn't make any findings on the specific aspect of the claim construction and our explanation for that is that there isn't any evidence about in response to. The closest you can find is on page A120 where the judge says, after he describes the three functions, which we all now know are really only two functions at best, he says the VIN pin is involved in the undervoltage lockout. That's really the best he could say because the undervoltage lockout does not operate in response to the value of the signal. At most, he could say it's involved in it because it's necessary to start up the circuit. That's a different thing than is required by the claims. The undervoltage lockout circuit operates in response to the VDD terminal. If it goes above 16 volts, it turns on. If it goes below 10 volts, it turns off. That's in response to the signal. That's a different pin. The VIN pin, the best he could say is it's involved in because it starts up the circuit. That's a very different thing and I suggest that the reason he didn't say it's in response to it is because he couldn't. There's no evidence on that. If I could just go back to the 398 patent briefly, there's been some question about whether or not System General's current input circuit monitors a voltage at the input or it's doing it somewhere internally. That's really a non-issue. The evidence is that it monitors a voltage between VIN and VDD. Those are external pins to the circuit. We're not talking about monitoring it somewhere inside. That's your one data sheet. That's the one data sheet. It is, but it's also the testimony represented. To go back to my point... But there was a contrary testimony. There was, but it's not our burden to prove that it monitors a voltage. But if there's a contrary testimony, he makes a finding. He made a finding. Your Honor, there's a contrary testimony as to the accuracy of that schematic. Sure, but that happens all the time in trials and that's the question of substantial evidence. If there's evidence the other way and he made a finding, that's the end of it. Your Honor, proving the schematic is not accurate is not the same as proving that it doesn't monitor voltage. Proving that we're wrong, okay. Let's assume they did that. Other than the schematic and the testimony with regard to the schematic, where's the evidence of voltage regulation in the current input circuit? It's not in the 439. Well, now... It's got to be somewhere. Sure. Our expert also testified in relation to the detailed schematic. It wasn't just in connection with the block diagram. But again, it wasn't our burden to prove that it did monitor voltage. That's part of the claim instruction. That's our position. I understand that. But once you put some testimony up to say, well, here's the reason why it doesn't, then a critique develops about the quality of the evidence you put in. I think that's what Judge Dyke was referring to. Accepting that. And if your evidence that you put in to overcome infringement is infected, if you will, so that the trier of facts says, I'm not going to accept infected defense, then you have a problem. I think we still win. What you're trying to say, I take it, is that whatever the quality of your testimony, there wasn't any testimony the other way. Right? You said it better than I did yesterday. I think that's it. Are there any more questions? Any more questions? Okay, thank you. Mr. Jakes, Mr. Walters, Mr. Pollack, the case is taken under submission.